**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOUGLAS CHESLIK,<br><br>    Plaintiff,<br><br>    v.<br><br>MADERA COUNTY SHERIFF'S DEPARTMENT, a public entity; COUNTY OF MADERA, a public entity; MADERA COUNTY DOE RN, individually; STATE OF CALIFORNIA; CALIFORNIA HIGHWAY PATROL, a public entity; SHERIFF TYSON J. POGUE; individually; DEPUTY K. BEHE, individually; CHP OFFICER EFRAIN JIMENEZ, individually; and DOES 1 through 10, individually,<br><br>    Defendants. | Case No.: 1:23-cv-01754 JLT BAM<br><br>ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND<br><br>(Doc. 19) |

Douglas Cheslik alleges that Defendants failed to provide and/or prevented him from receiving medical care after he was involved in a vehicle collision in the County of Madera, California, which left him with severe chest pain and other internal injuries. (*See generally* Doc. 5.) Plaintiff asserts claims against the County of Madera, Madera County Sheriff's Department, Madera County "Doe" Registered Nurse, Madera County Sheriff Tyson Pogue, and Madera County Sheriff's Deputy K. Behe ("County Defendants"), as well as the State of California, the California Highway Patrol, and CHP Officer Efrain Jimenez ("State Defendants"). (*Id.*) Plaintiff seeks to hold Defendants liable for, *inter alia*, violating his constitutional rights under the Fourth and Fourteenth Amendments to the United

1

States Constitution, and the laws and Constitution of the State of California. (*Id.*)[1]

Pending before the Court is the State Defendants' motion to dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 19.) For the reasons set forth below, the motion is **GRANTED with leave to amend**.

I.      Background and Allegations

Plaintiff alleges that on March 17, 2023, he was involved in a head-on vehicle collision after taking his eyes off the road. (Doc. 5 ¶ 24.) The collision left him with severe chest pain. *Id*. After the collision, he climbed out of a broken car window and due to the intolerable pain, proceeded to "roll[] on the ground" for 5 to 6 minutes "[a]s he waited for medical assistance." (*Id.* ¶ 25.) He alleges that CHP Officer Jimenez "[e]ventually" arrived at the scene but "failed to provide immediate medical care for his serious internal injuries." (*Id.* ¶ 26.) Upon Officer Jimenez's arrival, "rather than allowing [Plaintiff] to proceed with medical care from paramedics, [Officer Jimenez] disregarded his pleas and visible injuries and instead arrested him pursuant to a bench warrant for a failure to appear." (*Id.* ¶ 27.)

According to Plaintiff, Officer Jimenez and paramedics then began to assist others involved in the collision but "neglected" Plaintiff's need for medical care. (Doc. 5 ¶ 28.) Paramedics "[e]ventually" checked Plaintiff's blood pressure and told him it was "irregular." (*Id.*) Despite being "noticeably injured," Plaintiff alleges he was then placed in the back of the CHP vehicle and "was not taken to the hospital despite his request and informing [Officer Jimenez] that he had severe chest pain." (*Id.*) Instead, Officer Jimenez drove Plaintiff a block away from the scene of the collision and "paramedics pulled up, but only to clean the blood off" him. (*Id.*)[2] Afterward, Officer Jimenez drove Plaintiff to the Madera County Jail. (*Id.*)

Upon arrival at the jail, "Doe Registered Nurse" took Plaintiff's vitals and "informed him that something was wrong with his blood pressure." (*Id.* ¶ 29.) Plaintiff informed the nurse that he had just been involved in a serious car accident, he was having trouble breathing, and his chest "felt like it was on fire." (*Id.*) Despite his "obvious need for medical care," the nurse cleared him as "ok to be booked"

---

[1] For purposes of this order, the Court only considers the sufficiency of Plaintiff's allegations as they relate to the State Defendants.
[2] Elsewhere in the FAC, Plaintiff alleges Officer Jimenez "*only allowed* paramedics to clean the blood off" him. (Doc. 5 ¶¶ 38, 51, 61, emphasis added.)

2

and he was booked into Madera County Jail without being treated for his injuries. (*Id.*) While in custody at Madera County Jail, Plaintiff was left "to shiver in a cell while enduring increasingly excruciating pain from his internal injuries and a dangerously low body temperature … despite repeatedly verbalizing the need for medical attention" to jail personnel. (*Id.* ¶ 32.) He lost consciousness on two occasions while in jail custody, the second of which caused him to sustain a large gash on his head, leaving him "in a pool of his own blood," and requiring multiple stitches. (*Id.* ¶ 31.) Paramedics ultimately transported Plaintiff from the jail to Fresno Community Hospital, where he required "immediate and extensive surgery." (*Id.* ¶ 33.) He was informed that he had a broken toe, a lacerated and ruptured spleen, a perforated large intestinal wall, had lost 3 liters of blood internally, and he needed "an immediate blood transfusion to save his life." (*Id.* ¶ 34.)

Plaintiff filed this civil rights action in December 2023, asserting federal and state claims against 18 named and unnamed defendants. (Doc. 1.) His First Amended Complaint, filed on January 23, 2024, asserts three 41 U.S.C. § 1983 claims against Officer Jimenez only: two Fourteenth Amendment claims under the state-created danger and special relationship exceptions, respectively, (Claims One and Two) (Doc. 5 ¶¶ 36-58); and a Fourth Amendment claim for failure to provide medical care (Claim Three). (*Id.* ¶¶ 59-66.)[3] Plaintiff also advances, *inter alia*, a claim for violation of the Bane Act (Cal. Civ. Code § 52.1) against all Defendants (Claim Eleven). (*Id.* ¶¶ 140-147.) The State Defendants now seek dismissal of these four claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 19.) Plaintiff filed an opposition to the motion (Doc. 23), to which the State Defendants replied. (Doc. 24.)

## II.    Legal Standards

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. Porterville of San Diego*, 5 F.3d 1273, 1274 (9th Cir.

---

[3] Plaintiff also asserts, *inter alia*, Claims One and Two against Doe Defendants 1 through 10, (*see* Doc. 5 ¶¶ 36-58), and Claim Three against Doe Defendants 1 through 5. (*See id.* ¶¶ 59-66.)

1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). Moreover, legal conclusions need not be taken as true when "cast in the form of factual allegations." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III.     Discussion and Analysis

#### A.     42 U.S.C. § 1983

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that '(1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023), *cert. denied sub nom. Tulare v. Murguia*, 144 S. Ct. 553, 217 L. Ed. 2d 295 (2024) (quoting *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011)). There is no dispute that Officer Jimenez was acting under color of state law. Thus, the issue is only whether Plaintiff sufficiently alleges that Officer Jimenez's conduct deprived Plaintiff of his constitutional rights under

4

the Fourth and Fourteenth Amendments.

### 1. Fourteenth Amendment – Substantive Due Process (Claims 1 and 2)

The Due Process Clause of the Fourteenth Amendment is "a limitation on state action and is not a 'guarantee of certain minimal levels of safety and security.'" *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (quoting *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 195 (1989)).

> Simply failing to prevent acts of a private party is insufficient to establish liability. The general rule is that a state is not liable for its omissions and the Due Process Clause does not impose a duty on the state to protect individuals from third parties.
>
> There are two exceptions to this general rule. First, a special relationship between the plaintiff and the state may give rise to a constitutional duty to protect. Second, the state may be constitutionally required to protect a plaintiff that it affirmatively places … in danger by acting with deliberate indifference to a known or obvious danger.

*Id*. (internal quotations and citations omitted). "If either exception applies, a state's omission or failure to protect may give rise to a § 1983 claim." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 972 (9th Cir. 2011). Plaintiff asserts claims under both exceptions.

#### a. State-created danger exception

Two requirements must be met for the state-created danger exception to apply. First, there must be "affirmative conduct on the part of the state in placing the plaintiff in danger." *Patel*, 648 F.3d at 974 (quoting *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000)). Second, the state must "act[] with 'deliberate indifference' to a 'known or obvious danger.'" *Id*. (quoting *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)).

> To satisfy the first requirement, a plaintiff "must show that the officers' affirmative actions created or exposed [him] to an actual, particularized danger that [he] would not otherwise have faced." *Martinez*, 93 F.3d at 1271. "In examining whether an officer affirmatively places an individual in danger, we do not look solely to the agency of the individual, nor do we rest our opinion on what options may or may not have been available to the individual. Instead, we examine whether the officers left the person in a situation that was more dangerous than the one in which they found him." *Munger*, 227 F.3d at 1086. "The critical distinction is not … an indeterminate line between danger creation and enhancement, but rather the stark one between state action and inaction in placing an individual at risk." [*Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997)]. Furthermore, the plaintiff's ultimate injury must have been foreseeable to the defendant. *Martinez*, 943 F.3d at 1273. "This does not

> mean that the exact injury must be foreseeable. Rather, 'the state actor is liable for creating the foreseeable danger of injury given the particular circumstances.'" *Id.* at 1273-74 (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1064 n.5 (9th Cir. 2006)).
>
> As to the second requirement, "Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Patel*, 648 F.3d at 974 (*Bryan Cnty v. Brown*, 520 U.S. 397, 410 (1997)). This standard is higher than gross negligence and requires a culpable mental state. *Id.* at 974. When assessing non-detainee failure-to-protect claims, we apply a purely subjective deliberate indifference test. *Herrera v. L.A. Unified Sch. Dist.*, 18 F.4th 1156, 1161 (9th Cir. 2021). "For a defendant to act with deliberate indifference, he must 'recognize[ ] the unreasonable risk and actually intend[ ] to expose the plaintiff to such risks without regard to the consequences to the plaintiff.'" *Id.* at 1158 (quoting *Grubbs*, 92 F.3d at 899). In other words, the state actor must "know[ ] that something is going to happen but ignore[ ] the risk and expose[ ] [the plaintiff] to it." *Grubbs*, 92 F.3d at 900 (emphasis in original). "The deliberate-indifference inquiry should go to the jury if any rational factfinder could find this requisite mental state." *Patel*, 648 F.3d at 974.

*Murguia*, 61 F.4th at 1111.

### i. Actual, particularized danger

Plaintiff alleges that Officer Jimenez created or exposed him to the danger of death or serious bodily injury by "prevent[ing] [Plaintiff] from getting the medical care he required." (Doc. 5 ¶ 38.) He alleges that "by not acting affirmatively to care for [Plaintiff's] injuries," Officer Jimenez "placed [Plaintiff] in a preventable medical emergency where he bled internally for over three hours and lost over three litters [sic] of blood." (*Id.* ¶ 39.) Without Officer Jimenez's affirmative conduct, Plaintiff alleges he "would have been provided life-saving measures earlier and he would not have been subjected to the medical complications of his injuries." (*Id.* ¶ 41.)

Courts have applied the state-created danger doctrine to several cases that are instructive here. In *Estate of F.R. v. County of Yuba*, 2023 WL 6130049, at *1 (E.D. Cal. Sept. 19, 2023), a 10-year-old boy, F.R., was shot in the abdomen inside his relatives' home. F.R.'s relatives called 911 and were told an ambulance would be dispatched. When paramedics did not arrive after a "short while," F.R.'s relatives placed him in their truck to transport him to the hospital themselves. Several sheriff's deputies arrived as the vehicle was about to depart, surrounded the truck with their patrol vehicles, pointed firearms at the driver, dragged F.R. from the truck, and laid him in a puddle of water on the ground. The officers ignored the relatives' pleas to allow F.R. to be transported to the hospital in the

6

truck and prevented the relatives, including F.R.'s mother, from approaching F.R. The officers provided no emergency medical assistance and prevented anyone else at the scene from doing so. F.R. remained on the ground for at least fifteen minutes before paramedics arrived. He later died. *Id.*

As part of their state-created danger claim, plaintiffs alleged that defendants had prevented F.R.'s relatives from rendering medical assistance or transporting him to the hospital. *Estate of F.R.*, 2023 WL 6130049, at *2. The court found such prevention constituted "not a mere omission, but affirmative conduct that left F.R. 'in a situation that [is] more dangerous than the one in which they found him.'" *Id.* (quoting *Munger*, 227 F.3d at 1086). In the specific context of a gunshot wound, the court noted that in the Ninth Circuit, "where officers find a plaintiff facing a preexisting danger from [a] gunshot wound, [i]mpeding access to medical care amounts to leaving [the plaintiff] in a more dangerous situation." *Id.* (quoting *Maxwell v. County of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013)) (internal quotation marks omitted).

*Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997), offers additional guidance in the context of preventing medical care. One morning, Juan Penilla became seriously ill while on the porch of his home. *Id.* at 708. Neighbors and a passerby called 911 and tried to assist Penilla while waiting for paramedics to arrive, but two police officers were the first to respond. *Id.* Despite examining Penilla and finding him to be "in grave need" of medical care, the officers cancelled the request for paramedics, broke into Penilla's home, dragged him inside the home and out of public view, locked the front door, and left. *Id.* Penilla's family found him dead on the floor the following day, the result of respiratory failure. *Id.* at 708, 710. The Ninth Circuit, as part of its qualified immunity analysis, agreed with the district court that "by cancelling the 911 call, removing Penilla from public view, and locking the front door, the officers made it impossible for anyone to provide emergency medical care to Penilla[,]" and therefore, the officers' conduct "clearly placed Penilla is a more dangerous position than the one in which they found him." *Id*. at 710. The Court emphasized that "[t]he critical distinction is not, as appellants allege, an indeterminate line between danger creation and enhancement, but rather the stark one between state action and inaction in placing an individual at risk." *Id.*

An initial matter, Plaintiff's allegations pertaining to Officer Jimenez's inaction—i.e., his

failure to act affirmatively to provide medical care to Plaintiff (*see* Doc. 5 ¶¶ 26, 38-39)—are insufficient to satisfy the first requirement under the state-created danger doctrine. *See, e.g., Taylor v. Cnty. of Los Angeles*, 2020 WL 6136867, at *4 (C.D. Cal. Aug. 13, 2020), *aff'd sub nom. Taylor by & through Davies v. Cnty. of Los Angeles*, , 2021 WL 4596583 (9th Cir. Oct. 6, 2021) ("a mere failure to provide medical care and treatment is not affirmative conduct") (quoting *Griswold v. City of Tempe*, 2011 WL 145473, at *5 (D. Ariz. Jan. 18, 2011)); *Martinez v. City of Clovis*, 943 F.3d 1260, 1272 (9th Cir. 2019) (police officer's failure to inform plaintiff of her rights or options, failure to provide her with the police department's handout for domestic violence victims, and failure to arrest plaintiff's abuser following domestic violence incident were perhaps a "dereliction" of the officer's duties, but they were not "an affirmative act that created an actual, particularized danger").

As for Plaintiff's remaining allegations, Officer Jimenez's alleged conduct is not like that alleged in *Estate of F.R.* and *Penilla*. At most, Officer Jimenez responded to the scene of the accident, allowed paramedics to evaluate Plaintiff's injuries, lawfully arrested Plaintiff pursuant to an outstanding warrant, ignored Plaintiff's request to be taken to the hospital and his complaints of chest pain, allowed Plaintiff to be seen by paramedics a second time, then drove Plaintiff to the Madera County Jail where, upon arrival, Plaintiff was medically evaluated by the intake nurse. The unfortunate series of events that followed Plaintiff's arrival at the jail are immaterial to this analysis.

Taking the allegations in the FAC as true, the Court is required to draw *reasonable* inferences in Plaintiff's favor. His conclusory allegation that Officer Jimenez prevented him from receiving medical care is contradicted by his allegations that he was seen by paramedics on two occasions at or near the scene of the collision—once to take Plaintiff's blood pressure and another to clean blood off him. Plaintiff alleges that Officer Jimenez parked "a few blocks" away from the accident after Plaintiff was placed inside the CHP vehicle. (*Id.* ¶ .)[4] However, Plaintiff does not allege that Officer Jimenez did this to *prevent* Plaintiff from being seen by medical personnel. In fact, he alleges that Officer Jimenez parked and waited for paramedics. (See id. ¶ 28.)

---

[4] In reciting the factual allegations, Plaintiff asserts Officer Jimenez "parked a block away from the scene of the accident and paramedics pulled up, but only to clean the blood off [Plaintiff] before [Officer Jimenez] took him to Madera County Jail." (Doc. 5 ¶ 28.)

8

1        Plaintiff does not allege that Officer Jimenez interrupted the paramedics' evaluation of Plaintiff, that paramedics attempted to provide, or would have provided, Plaintiff with additional medical care had Officer Jimenez not prevented it, or what that additional care would be. He also does not allege that the paramedics shared their medical findings with Officer Jimenez, or that they expressed to Officer Jimenez that Plaintiff needed additional medical care or needed to go to a hospital. Therefore, the conclusory allegation that absent Officer Jimenez's conduct, Plaintiff "would have been provided life-saving measures earlier and he would have not been subjected to the medical complications of his injuries" is wholly unsupported by the facts alleged. (Doc. 5 ¶ 41.)

       Perhaps Plaintiff is suggesting that had he not been arrested, he would have gone to the hospital sooner. Had Officer Jimenez not run Plaintiff's information through a law enforcement database to reveal an active warrant, or had he not responded to the scene at all, it is possible that Plaintiff may not have been arrested at the scene. But by responding to the scene, along with paramedics, and lawfully arresting Plaintiff, it cannot be said that Officer Jimenez left Plaintiff "in a situation that was more dangerous than the one in which [Officer Jimenez] found him." *Munger*, 227 F.3d at 1086. Plaintiff also alleges he was the last individual involved in the collision to be "viewed" by paramedics, but he does not allege how, or to what extent, Officer Jimenez played a part in that decision. (*See* Doc. 5 ¶ 26.) He does not allege how many others were involved in the collision, the extent of their injuries, or how his medical needs were tantamount such that being seen last amounted to neglect. (*See id.* ¶ 28.)

       In sum, Plaintiff points to no inherent danger, as a matter of common sense, in lawfully arresting an individual and taking him to the local jail to be medically evaluated rather than the hospital. Absent any allegations showing that it was known or obvious that Plaintiff's life was potentially at risk during the unknown length of his encounter with Officer Jimenez, the Court cannot reasonably infer that Officer Jimenez left Plaintiff in a situation that was more dangerous than the one in which he found him. An individual's involvement in a vehicle collision that leaves him with chest pain is not enough to cross that threshold.

                              ii.       *Foreseeability and deliberate indifference*

       Plaintiff likewise fails to plausibly allege that his ultimate injuries were foreseeable or that

1  Officer Jimenez was deliberately indifferent to the danger Plaintiff faced. He asserts that because
2  Officer Jimenez "knew that [Plaintiff] was suffering a medical emergency, it was foreseeable that
3  [Plaintiff] would have suffered death or great bodily injury if he was not provided medical care."
4  (Doc. 5 ¶ 43.) He also alleges Officer Jimenez was deliberately indifferent because he knew Plaintiff
5  "could have died or suffered great bodily harm if he had not provided timely medical care." (*Id.* ¶ 44.)
6  However, Plaintiff does not demonstrate how Officer Jimenez knew Plaintiff was suffering a medical
7  emergency. For example, he does not allege what his "visible injuries" consisted of, and, in fact,
8  alleges that "if [Officer Jimenez] would not have prevented [Plaintiff] from receiving medical care,
9  [Plaintiff's] injuries *would not have escalated to a medical emergency*[,]" which contradicts Plaintiff's
10 allegation that he was already suffering a medical emergency. (*Id.* ¶ 42.) He also fails to allege facts
11 demonstrating that any foreseeability was unaffected by the treatment he received by paramedics. To
12 this end, Plaintiff's claim that he was not provided medical care directly contradicts the facts alleged
13 in the FAC. To the extent Plaintiff contends that the care provided by *paramedics* was inadequate, this
14 also has no bearing on Officer Jimenez's liability. Therefore, the State Defendants' motion to dismiss
15 is **GRANTED** with respect to Plaintiff's second claim. However, because Plaintiff's pleading
16 deficiencies may be cured by alleging additional facts, dismissal of this claim is with leave to amend.
17 *Cook*, 911 F.2d at 247.

18             b.      *Special relationship exception*

19      "[W]hen the State takes a person into its custody and holds him there against his will, the
20 Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and
21 general well-being." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200
22 (1989).

23 > The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

26 *Id.* at 200.

27      The parties do not dispute that Plaintiff was in Officer Jimenez's custody such that this
28 exception is triggered. The only question is whether the FAC states a plausible claim that Officer

10

Jimenez failed to protect Plaintiff in violation of his substantive due process rights under the Fourteenth Amendment. For many of the same reasons just discussed, this must be answered in the negative.

The Court briefly illustrates how the facts alleged here set this case apart from those where liability was sufficiently alleged. *Guy v. Lorenzen*, 547 F. Supp. 3d 927 (S.D. Cal. 2021) is instructive. On an early morning before sunrise, Deovante L. Guy was detained by a police officer on suspicions of vandalism. *Id.* at 936. While the officer had Guy pinned to the ground—in the second lane of a four-lane road—Guy was run over by an SUV. *Id.* at 936, 940. The officer was also hit by the vehicle. *Id.* at 936. "Numerous" other police officers on the scene ran over to check on the injured officer but disregarded Guy's medical needs and "left [him] for dead," even though Guy's "body was lifeless" in the middle of the street and his "blood drenched the scene of the collision." *Id.* at 940. These allegations allowed the court "to draw a plausible inference that officers failed to fulfill their duty to protect Guy by rendering adequate medical aid." *Id.*

As part of his special relationship claim, Plaintiff asserts that Officer Jimenez failed to preserve his safety and well-being by only allowing paramedics to clean the blood off him and by transporting Plaintiff to jail even though he had been involved in a serious car accident. (*See* Doc. 5 ¶¶ 52-54.)[5] Unlike the facts alleged in *Guy*, nothing in the FAC suggests that while Plaintiff was in Officer Jimenez's custody, Officer Jimenez failed to provide him with adequate medical care. As Defendants note,

> Plaintiff was seen by paramedics twice after he was placed in custody [citation] and there is no indication that medical personnel informed Officer Jimenez that Plaintiff needed immediate medical care or that he was suffering from internal injuries. Plaintiff was also seen by the intake nurse at the Madera County Jail. [citation] There is nothing to suggest that Officer Jimenez was informed by the nurse that Plaintiff was in need of immediate medical care or that he was suffering from internal injuries.

(Doc. 19 at 9, citing Doc. 5 ¶¶ 27-29.)

---

[5] In his opposition, Plaintiff explains that Officer Jimenez "impeded [him] from receiving proper care at the scene of the collision and only allowed paramedics to wipe blood off [Plaintiff] away from the scene of the collision under suspicious circumstances." (Doc. 23 at 15, citing Doc. 5 ¶ 28.) Plaintiff fails to explain what these "suspicious circumstances" were, and such an allegation is absent from the FAC. Thus, the Court cannot reasonably infer that a constitutional violation plausibly occurred based on these allegations.

Plaintiff appears to take the position that Due Process required Officer Jimenez to provide Plaintiff with the medical care that *Plaintiff* deemed appropriate. However, it does not follow that the special relationship doctrine creates a responsibility on a law enforcement officer to challenge the decisions of trained medical professionals. Nor does it follow that, after an arrestee is evaluated by medical professionals, a state official nonetheless has a duty to transport the arrestee to the hospital, rather than jail, if he so requests.[6]

2.   Fourth Amendment – Failure to Provide Medical Care (Claim 3)

Plaintiff also advances a Fourth Amendment claim for failure to provide medical care against Officer Jimenez. (*See* Doc. 5 ¶¶ 59-66.)[7] The State Defendants urge dismissal of this claim, arguing Officer Jimenez provided adequate post-arrestee care to Plaintiff. (*See* Doc. 19-1 at 7-8.)

Claims of denial of medical care during and immediately following an arrest are analyzed under the Fourth Amendment and its "objective reasonableness" standard. *Smith v. Chino Valley, Town of*, 2023 WL 5000631, at *12 (D. Ariz. Aug. 4, 2023), *aff'd sub nom. Smith v. Town of Chino Valley*, No. 23-2142, 2025 WL 817422 (9th Cir. Mar. 14, 2025) (citing *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1098 (9th Cir. 2006)). At a minimum, this requires law enforcement officers to "seek necessary medical attention by promptly summoning help or taking the injured arrestee to a hospital." *Borges v. City of Eureka*, 2017 WL 363212, at *6 (N.D. Cal. Jan. 25, 2017) (quoting *Est. of Cornejo ex rel. Solis v. City of Los Angeles*, 618 F. App'x 917, 920 (9th Cir. 2015)). The Fourth Amendment does not require officers to provide "what hindsight reveals to be the most effective medical care for an arrested suspect." *Tatum*, 441 F.3d at 1098.

However, "[a] police officer may violate the Fourth Amendment by failing to act in a reasonably prompt manner. *Holcomb*, 2013 WL 5947621, at *4 (stating that, "[b]ecause paramedics

---

[6] Because it is not entirely clear at what point Plaintiff was arrested, and because Defendants' motion does not raise the issue, the Court encourages Plaintiff to consider the appropriateness of asserting a Fourteenth Amendment claim based on Officer Jimenez's conduct during and immediately after Plaintiff's arrest and, as discussed *infra*, a Fourth Amendment claim based on the same conduct. *See, e.g., Espinoza v. California Highway Patrol*, 2016 WL 4943960, at **3, 4 (E.D. Cal. Sept. 16, 2016); *Borges v. City of Eureka*, 2017 WL 363212, at *6 & n.3 (N.D. Cal. Jan. 25, 2017).

[7] In his opposition brief, Plaintiff states the standard governing claims for deliberate indifference to a serious medical need under the Fourteenth Amendment. (*See* Doc. 23 at 16, quoting *Young v. City of Menifee*, 2019 WL 4238880, at *7 (C.D. Cal. Aug. 2, 2019).) However, in accordance with Ninth Circuit law and the allegations in the operative complaint, the Court analyzes the denial of medical care claim under the Fourth Amendment.

were called, the issue is whether the officers made the call in a reasonably 'prompt' manner"). *Espinoza v. California Highway Patrol*, 2016 WL 4943960, at *3 (E.D. Cal. Sept. 16, 2016) (citing *Holcomb v. Ramar*, 2013 WL 5947621, at *4 (E.D. Cal. Nov. 4, 2013)). "Whether the officers acted reasonably and were sufficiently 'prompt' depends in part on the length of the delay and the seriousness of the need for medical care." *Holcomb*, 2013 WL 5947621, at *4.

Plaintiff alleges that Officer Jimenez "did not allow [him] to get the proper medical care that he required and instead parked down the road from the initial collision, waited for paramedics, and only allowed paramedics to clean the blood off [him]." (Doc. 5 ¶ 61.) Defendants argue that "[e]ven accepting Plaintiff's claims as true, Officer Jimenez fulfilled his duty to provide post-arrest medical aid as paramedics were at the scene and checked [P]laintiff, once for his blood pressure and a second time to clean the blood off him." (Doc. 19-1 at 7.) According to Defendants, "[t]he FAC implies that no trained medical [professional] informed Officer Jimenez that Plaintiff required additional medical treatment, or that he needed to go to the hospital," and the FAC does not suggest "that Officer Jimenez had reason to believe that the paramedics' treatment of [P]laintiff was deficient, or that he needed additional medical care." (*Id.*) The Court agrees.

Moreover, even assuming the care Plaintiff received at the scene was somehow inadequate, Plaintiff was further evaluated by the intake nurse upon arrival at the Madera County Jail, and Plaintiff does not allege facts that Officer Jimenez delayed his transport. In *Borges*, the City of Eureka Police Department responded to a call concerning a man appearing to be under the influence and taking off his clothes on a city sidewalk. 2017 WL 363212, at *2. The responding officer observed Daren Borges displaying signs of stimulant intoxication and arrested Borges for public intoxication. *Id*. Another officer arrived shortly thereafter, and the two decided Borges could be taken directly to Humboldt County Jail rather than the hospital. *Id*. Once in the jail, Borges was placed in a sobering cell due to his "resistance and unpredictability" during an initial pat-down. *Id*. About 20 minutes later, at around 3:00 p.m., a nurse came to evaluate Borges, but she did not enter the cell due to his agitated state. *Id*. Officers performed regular cell safety checks over the next hour, including by live video monitoring. *Id*., at *3. The footage showed Borges' last detectable movement at around 3:17 p.m. *Id*. When officers performed a final safety check at 4:00 p.m., Borges did not appear to be breathing. *Id*. He was

transported to the hospital around 4:16 p.m. but ultimately died from methamphetamine intoxication. *Id*.

Of particular relevance here, Borges' mother sued the City police officers for denial of medical care under the Fourth Amendment, alleging that Borges had "signs and symptoms of a high level of methamphetamine intoxication and possible overdose, excited delirium, and/or a head injury."[8] *Borges*, 2017 WL 363212, at \*\*5-6. She further alleged that "[o]fficers are reasonably trained that any one of these three conditions requires immediate medical attention, and the simple step of either calling paramedics or transporting Borges to the hospital would not have been contrary to any legitimate police interests." *Id.*, at \*6. The Court disagreed, explaining:

> Even assuming that the City officers knew Borges was under the influence of a stimulant and may have had signs of an overdose, plaintiff has offered no authority to suggest that the only reasonable course of action is to take the arrestee to the hospital rather than a nearby jail, where the arrestee should receive a medical evaluation. Although taking Borges to the hospital may have been the most effective medical care for him in hindsight, this is not required by the Fourth Amendment.

*Id.*, at \*7.

The plaintiff in *Smith v. Chino Valley*, who was injured during his arrest, alleged that the defendant officers violated his constitutional rights by failing to provide proper medical care when he repeatedly complained of knee pain and told them that his leg was broken. *Id.*, 2023 WL 5000631, at \*12. Despite his pleas, the officers took no action, and although paramedics were present at the scene, Plaintiff was not checked for injuries. *Id.*, at \*4. Instead, paramedics triaged Plaintiff after officers transported him to the police station. *Id*. Afterward, he was transported to the hospital for treatment. *Id.*, at \*12. The court noted that plaintiff did not dispute that the officers summoned necessary medical help upon arrival at the police station, at which point he was taken to the hospital. *Id*. Rather, plaintiff appeared to be claiming it was objectively unreasonable for the officers to *first* transport him to the police station to be evaluated rather than ask paramedics to evaluate him at the scene. *Id*.

---

[8] In the alternative, plaintiff asserted her denial of medical care claim under the Fourteenth Amendment. *Borges*, 2017 WL 363212, at \*6. However, at the hearing on defendants' motion for summary judgment, the parties agreed that Borges' right to medical care during and immediately following his arrest was governed by the Fourth Amendment's objective reasonableness standard, and the Fourteenth Amendment claim was dismissed as moot. *Id.*

Considering the foregoing case law, and the allegations that Officer Jimenez transported Plaintiff to Madera County Jail for medical evaluation by the intake nurse, whom Plaintiff alleges evaluated him upon his arrival, (*see* Doc. 5 ¶ 29), the Court concludes that Officer Jimenez provided the post-arrestee medical care the Fourth Amendment required of him. As such, the mere fact—assuming its truth—that Officer Jimenez limited paramedics' care at the scene to checking Plaintiff's blood pressure and cleaning off his blood before transporting him to jail is not determinative.

Additionally, Plaintiff does not allege facts demonstrating that Officer Jimenez delayed his transport. As a court in this District held in *Espinoza*, because Plaintiff acknowledges he was transported to Madera County Jail following his arrest, Plaintiff "would have to allege that [Officer Jimenez] failed to act in a reasonably prompt manner" in transporting him to Madera County Jail. *See Espinoza*, 2016 WL 4943960, at *4. The *Espinoza* court found that although plaintiff alleged that he was denied "timely" medical care, this was a mere conclusion that, without specific allegations describing the length of delay, the defendant's actions during the delay, or any observable medical symptoms exhibited by plaintiff, was insufficient to state a plausible Fourth Amendment claim. *Id.* The court in *Holcomb* held similarly. *Id.*, 2013 WL 5947621, at *4 (concluding that based on plaintiffs' allegations describing injuries inflicted by defendant and that he repeatedly informed defendants he needed an ambulance, court could reasonably infer that plaintiff was in pain and in need of medical attention but could not infer length of delay or seriousness of medical need, especially where plaintiff was cleared by paramedics).

Here, Plaintiff alleges Office Jimenez failed to provide him "immediate" medical care, (Doc. 5 ¶ 26), but he fails to allege that his injuries were caused by a delay in his transport to the *jail*, let alone facts describing the length of any such delay or Officer Jimenez's conduct during the delay. And although Plaintiff makes conclusory assertions that he had "visible" injuries and was in "obvious" need of medical care, (Doc. 5 ¶¶ 27, 29), he fails to allege specific facts describing any observable symptoms he exhibited to allow the Court to infer the seriousness of his medical need.[9] *Espinoza*, 2016 WL 4943960, at *4; *Holcomb*, 2013 WL 5947621, at *4.

---

[9] Allegations made by Plaintiff in his opposition brief that are not included in the operative complaint are not considered for purposes of this motion. (*See, e.g.,* Doc. 24 at 13-14.)

Accordingly, Plaintiff fails to plausibly allege a Fourth Amendment claim based on Officer Jimenez's denial of medical care and to this extent, the State Defendants' motion to dismiss is **GRANTED**. However, because Plaintiff's pleading deficiencies may be cured by alleging additional facts, dismissal of this claim is with leave to amend. *Cook*, 911 F.2d at 247.

        3.      California Civil Code § 52.1 – Tom Bane Act (Claim 11)

Plaintiff's final claim alleges a violation of the Bane Act against all Defendants. (*See* Doc. 5 ¶¶ 140-147.) The State Defendants move to dismiss this claim, arguing that it is based upon the same facts supporting Plaintiff's Fourth and Fourteenth Amendment claims, and that the FAC does not contain allegations regarding the State Defendants' specific intent to violate Plaintiff's rights. (Doc. 19-1 at 8.)

The Bane Act provides a cause of action for interference "by threats, intimidation, or coercion" or attempted interference, "with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(a); *see also Venegas v. County of Los Angeles,* 32 Cal. 4th 820, 843 (2004) ("Civil Code section 52.1 does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right."). To state a claim under section 52.1, a plaintiff must demonstrate that the interference with the constitutional right was accompanied by an act of coercion. *Jones v. Kmart,* 17 Cal. 4th 329, 334 (1998) ("[S]ection 52.1 does require an attempted or completed act of interference with a legal right, accompanied by a form of coercion."). In addition, the Bane Act requires a specific intent to violate the plaintiff's rights. *See Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018); *Cornell v. City & Cnty. of S.F*., 17 Cal. App. 5th 766, 801-02 (2017).

Plaintiff argues in opposition that he has sufficiently stated a Bane Act claim against the State Defendants by alleging that the *State Defendants* (1) interfered with Plaintiff's "right to get medical care for his serious medical needs" following his collision; and (2) were deliberately indifferent to

16

Plaintiff's medical needs. (*See* Doc. 23 at 17-18.)[10] However, Plaintiff does not direct the Court to these allegations in the FAC and the Court likewise has not found them. Plaintiff also makes the bare contention that as to Officer Jimenez, the FAC "clearly alleges sufficient facts to state a cause of action."(*Id.* at 18.) However, he cites to paragraphs 133-139 of the FAC, none of which pertain to Officer Jimenez. (*See id.* at 17.)

In sum, Plaintiff has failed to allege facts to support an inference that State Defendants had the specific intent required for Plaintiff to proceed on his Bane Act claim. Furthermore, while Plaintiff may rely on the same factual allegations upon which he bases his Fourth and Fourteenth Amendment claims, where the federal claim is deficient and the Bane Act claim relies upon the federal constitutional violation as its foundation, the Bane Act claim also fails. Thus, the State Defendants' motion is **GRANTED** as to Plaintiff's Bane Act claim. As with claims one through three, Plaintiff will be granted leave to amend this claim to cure any deficiencies.

### IV.    Conclusion and Order

Based upon the foregoing, the Court **ORDERS**:

1. The State Defendants' motion to dismiss (Doc. 19) is **GRANTED**.
2. Plaintiff's first, second, third, and eleventh claims for relief are **DISMISSED WITH LEAVE TO AMEND** as to Defendant CHP Officer Efrain Jimenez.
3. Plaintiff's eleventh claim is **DISMISSED WITHOUT LEAVE TO AMEND** as to the State of California and the California Highway Patrol.
4. Plaintiff **SHALL** file any amended complaint within 30 days, or he **SHALL** file a notice that he wishes to stand on his First Amended Complaint. Failure to timely file an amendment or notice of non-amendment may result in the Court *sua sponte* dismissing the action without further notice.

IT IS SO ORDERED

Dated March 31,2025

UNITED STATES DISTRICT JUDGE

---

[10] Plaintiff claims that the FAC alleges the *State Defendants* interfered with his right to medical care and were deliberately indifferent to his medical needs. (Doc. 23 at 18.) Based on the Court's review, these allegations are absent from the FAC.